NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NAVRAJ RESTAURANT GROUP, LLC, et. al.,<br><br>Plaintiffs,<br>v.<br><br>PANCHERO'S FRANCHISE CORP., et. al.,<br><br>Defendants. | Civil Action No. 11-cv-7490 (PGS)<br><br>**MEMORANDUM DECISION<br>& ORDER** |

SHERIDAN, U.S.D.J.

This matter comes before the Court on a motion to dismiss filed by Defendants Panchero's Franchise Corp. ("Panchero's") and Rodney L. Anderson ("Anderson") (ECF No. 21). Plaintiffs Navraj Restaurant Group ("Navraj"), Rajendra I. Patel and Navneet Patel ("Navraj Owners"), AMP Food Holdings ("AMP"), and Erik Papadopolo, Bahram Asgarian, and Prabodh Menon ("AMP Owners"), allege numerous statutory violations under the New Jersey Franchise Practices Act ("NJFPA"), N.J.S.A. §56:10-1, the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. §56:8-1, the Iowa Business Opportunity Promotions Law ("Iowa Act"), Iowa Code Title XIII §§551A, along with numerous common law violations including breach of contract, tortious interference with prospective economic advantage, breach of implied duty of good faith and fair dealing, fraud and lost income. Defendants move for dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), 9(b) and 10(b). After consideration of the parties written submissions, and oral argument held on July 22, 2013, the Court (1) denies the motion to the

extent it seeks dismissal based on a forum selection clause, (2) holds that the AMP Parties' claims must be pursued before an arbitrator, and (3) gives the parties fourteen days within which to assert their right to seek arbitration of the Navraj Parties' claims. The Court reserves decision on the remaining issues until after the parties' time to elect arbitration has run.

**BACKGROUND**

In March 2007, Defendant Navraj Restaurant Group, LLC ("Navraj") entered into an agreement with Panchero's (the "Navraj Agreement"); the Navraj Agreement governed a development relationship whereby Navraj was to serve as an agent of Panchero's for the purpose of recruiting and soliciting franchises in the New Jersey area. At the same time, the Navraj Owners signed a Guaranty and Assumption of Obligations personally assuming the obligations in the Navraj Agreement. *Id.* Pars 5-6.

In October 2010, Plaintiff AMP Holdings, LLC ("AMP") entered into a Panchero's Franchise Corporation Franchise Agreement with Panchero's (the "AMP Agreement"). At the same time, the AMP Owners signed a Guaranty and Assumption of Obligations personally assuming the obligations in the AMP Agreement,

**A. Navraj**

Navraj alleges that pursuant to the terms of the Navraj Agreement, Navraj was to serve as an agent of Panchero's for the purpose of recruiting and soliciting franchises in the New Jersey area. The Navraj Agreement also contemplates Navraj owning and operating a Panchero's restaurant within the state of New Jersey.[1]

The Navraj Parties allege that Panchero's failed to provide the support guaranteed in the contract, and thus through actions and inactions breached the agreement. The Navraj Parties

---

[1] Development Agent Agreement, Motion to Dismiss, Exhibit 1 at P. 2, ¶3: "You (or your owners) must at all times during this Agreement's term own and operate at least one (1) franchised Panchero's Restaurant within the Territory"

contend that defendants made numerous statements prior to execution of the Navraj Agreement that were knowingly false and misleading in order to induce the execution of the agreement.[2] In addition, the Navraj Parties claim that defendants breached Section 1(B) and 2(A) of the Navraj Agreement by refusing to approve potential franchise locations in areas with a heavy presence of African-Americans and Hispanics.[3] (*Id*, ¶49). The Complaint further asserts that Panchero's improperly increased franchise fees and heightened approval criteria, and unilaterally changed the 50/50 franchise and royalty fee split agreement without the Navraj Parties' consent. (*Id*, ¶¶49, 50). The Complaint further contends a breach of Section 3(B) and (C) of the Development Agreement, as the Navraj Parties claim Panchero's failed to make payments as required by the contract and forcefully took out money from the Navraj account for the royalties of an unrelated store. (*Id*, ¶¶ 48, 50). Navraj and the Navraj Owners further contend that the real estate broker, contractors, and agents that Panchero's required per their agreement were incompetent, unethical, dishonest, and discriminated against minorities (*Id*, ¶13), and failed to provide the agreed upon support as required in the contract. (*Id*, ¶15).

### B. AMP Parties

The AMP Agreement provided that AMP was to operate at least one Panchero's restaurant. It is undisputed that AMP and Panchero's maintain a franchisor-franchisee business relationship.

Like the Navraj Parties, the AMP Parties also allege that Panchero's made knowingly false and misleading statements in order to induce the signing and execution of the franchise

---

[2] Navraj alleges that defendants at least made the following knowingly false and misleading statements: sections of the Uniform Franchise Offering Circular (Compl. ¶12); statements regarding the planned number of franchise units in New Jersey (*id.* ¶29); statements about other potential suitors (*id.* ¶¶30, 32); and the overstatement of the level of support defendants would offer plaintiffs (*id.* ¶¶32, 35).

[3] Including cities (Newark, Morristown, Hoboken, Jersey City, Exchange Place), malls, transit hubs (Penn Station), sports arenas, hospitals, and airports (Amended Comp. ¶49).

agreement. The AMP Parties claim that the Franchise Disclosure Document ("FDD") presented by Panchero's prior to AMP's execution of the agreement was knowingly false and misleading, and presented to induce an agreement. (*Id*, ¶17). Additionally Panchero's made other knowingly false statements with the intent to mislead before the AMP Agreement was executed, including that the restaurant planned to create a brand value in New Jersey and that defendants employed a development agent in the state. (*Id*, ¶36).

The AMP Parties also allege that defendants violated Section III(B) of the AMP Agreement by not approving or disapproving their proposed location for their franchise within thirty days as required by the Agreement. (*Id*, ¶51). Plaintiffs contend this breach adversely impacted the financial terms of the lease agreement, which made it financially unfeasible to continue the project. In addition, the AMP Parties claim that Panchero's improperly terminated the Navraj Agreement, which allegedly led to a cessation of all help, assistance and support from Panchero's. (*Id*, ¶18).

### C. Forum

Although this case is before the Court on a motion to dismiss, this decision primarily addresses the proper forum for this action. Defendants have asserted a number of substantive defenses on the merits of Plaintiffs' allegations, but initially seek to have the Navraj Parties' claims dismissed in favor of suit in an alternative United States District Court, and to have the AMP Parties' claims dismissed in favor of arbitration. Defendants assert that the Navraj claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) based on the existence of a forum selection clause contained in the Navraj Agreement. The forum selection clause states:

> You and your owners agree that all actions arising under this Agreement or otherwise as a result of the relationship between you and us must be commenced in a state or federal court of general jurisdiction in Cook County, Illinois, and you (and each owner)

4

irrevocably submit to the jurisdiction of those courts and waive any objection you (or the owner) might have to either jurisdiction of or venue in those courts.

(Motion to Dismiss, Exhibit 1, at 19, ¶G). Defendants assert that the AMP Parties' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) based on the existence of a mandatory arbitration provision contained in the AMP Agreement. The relevant mandatory arbitration clause states:

> Franchisor and Franchisee agree that all controversies, disputes, or claims between Franchisor and its affiliates . . . and Franchisee . . . arising out of or related to: (1) this Agreement or any other agreement between Franchisee and Franchisor; (2) Franchisor's relationship with Franchisee; (3) the scope or validity of this Agreement; (4) any operating standard relating to developing and servicing Panchero's Restaurants, must be submitted for binding arbitration, on demand of either party.

(Motion to Dismiss, Exhibit 1, P. 50, at XXXI). Both agreements – the Navraj Agreement and the AMP Agreement – each contain the identical forum selection and mandatory arbitration clauses.

**DISCUSSION**

    **A.    Legal Standard**

On a motion to dismiss, the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See, e.g., Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A Complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. Iqbal, 129 S. Ct. at 1950. The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000), cert. denied, Forbes v.

Semerenko, 531 U.S. 1149 (2001).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Iqbal, 129 S. Ct. at 1949; Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir.1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir.1993). The Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citations and quotations omitted); see also Iqbal, 129 S. Ct. at 1949-50.

### B.     Forum

As previously stated, although styled as a motion to dismiss, many of the Defendants' arguments concern the proper forum. Defendants argue that dismissal is an appropriate means both to enforce forum selection clauses and to compel arbitration pursuant to mandatory arbitration provisions. Plaintiffs argue that New Jersey is the correct forum, and that New Jersey law should apply to the dealings between all of the plaintiffs and defendants. For the reasons that follow, the Court will refer the AMP Parties' claims to arbitration, as the arbitration clause in the AMP Agreement has been invoked by Defendants, and the Court finds that it is valid and enforceable. The Court also holds herein that the Navraj Agreement created a "franchise" under

the New Jersey Franchise Practices Act, such that the forum selection clause contained in the Agreement is presumed invalid, and thus the Court declines to dismiss the case in favor of forum in Illinois. The Court, however, does not rule on the merits of the parties' dispute as addressed in the instant motion to dismiss, because the Court will give the parties time to decide whether to invoke the arbitration clause in the Navraj Agreement as Defendants have already done with respect to the clause in the AMP Agreement.

1. Navraj

Any forum selection clause in a contractual relationship between a franchisor and franchisee under the NJFPA is presumed invalid. Kubis & Perszyk Associates, Inc. v. Sun Microsystems, Inc., 146 N.J. 176 (1996). Forum selection clauses, according to the New Jersey Supreme Court, fundamentally conflict with the basic legislative objectives of protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief against franchisors that violate the Act. Id. at 193. As such, if the contracts create a franchisor-franchisee relationship, the franchisees are protected under the Act. Here, the parties dispute whether Navraj Agreement creates a franchisor-franchisee relationship; the parties are in agreement that the relationship between AMP and Panchero's is one of franchisor-franchisee.

Navraj argues that the Navraj Agreement creates a "franchise" under the NJFPA and thus that this is the proper forum to hear the Complaint. (Amended Comp. ¶25). Defendant rejects this characterization. According to the NFJPA, there are three factors that must be met in order to sustain a "franchise" classification: (1) there is a "community of interest" between the franchisor and the franchisee in the marketing of goods or services; (2) the franchisor granted a "license" to the franchisee; and (3) the parties contemplated that the franchisee would maintain a place of business in New Jersey. *N.J.S.A. 56:10-3a, 56:10-4*. The defendants argue that Navraj fails to

meet any of these classifications, while the plaintiffs argue that the contractual relationship satisfies all three required standards.

In order to satisfy the first "community of interest" statutory requirement, two factors must be met: (1) the distributor's investments must have been substantially franchise specific, Instructional Systems, Inc. v. Computer Curriculum Corp., 614 A.2d 124, 141 (1992), and (2) the distributor must have been required to make these investments by the parties' agreement or the nature of the business. N.J.S.A. 56:10-3(a).[4] Defendants argue that no such "community of interest" exists in the instant case, as the agreement only concerned finding owners for restaurants rather than marketing goods or services to consumers. The Navraj Parties, however, note that in their Development Agreement the payment clause characterizes the use of their initial deposit as follows:

> This fee [of $375,000] includes the amounts due for the development agent rights granted by this Agreement *plus the initial franchise fee* that you must pay us for the Panchero's Restaurant that you (or your owners) must own and operate within the Territory.

(Motion to Dismiss, Exhibit 1 at 6, ¶A) (emphasis added). The Navraj Parties also cite numerous other provisions in the contract that concern the marketing of goods or services at wholesale or retail.[5] Navraj appears to meet the first requirement under the Act.

In order to satisfy the second statutory requirement – the "license" requirement – the franchisor must give its approval for the franchise to use its trademark or other identifying characteristics such that the public is induced to "expect from [the franchise] a uniformly acceptable and quality controlled service endorsed by [the franchisor]." Neptune T.V. & Appliance Service, Inc. v. Litton Microwave Products, Div., Litton Systems, Inc., 462 A.2d 595, 599 (1983). Defendants expressly reject that Panchero's granted any type of license to Navraj.

---

[4] *See also* New Jersey American, Inc. v. Fidelco Pump & Compressor Corp., 844 F.2d 117, 120-121 (3d Cir. 1988)
[5] Defendant Motion to Dismiss, Exhibit 1, at ¶¶1(A)-(B), 2, 3, 5, 6, 9(C), 13(F).

However, the Navraj Agreement explicitly grants the plaintiffs a right to use a trade name, trademark, service mark, or related characteristics.[6] Apparently Navraj would have had complete access to Panchero's trademarks and documents relating to the corporate restaurant.

In order to satisfy the third requirement – the "place of business" requirement – the Act requires the contractual agreement to "contemplate or require" the franchisee to establish or maintain a place of business within the state of New Jersey. N.J.S.A. 56:10-4(a). The Navraj Agreement provides: "You [Navraj] (or your owners) must at all times during this Agreement's term own and operate at least one (1) franchised Panchero's Restaurant within the Territory." (Motion to Dismiss, Exhibit 1 at 2, ¶3). The contract therefore explicitly discusses and contemplates a Navraj-owned franchise in the State of New Jersey. Defendants do not respond to this argument. Thus, it appears that Navraj meets all three statutory requirements to be considered a "franchise" under the NJFPA.

Although the language in the NJFPA refers specifically to motor vehicle franchises, the New Jersey Supreme Court ruled that the Legislature intended its proscription of forum selection clauses in franchise agreements to apply to "all franchises under the Act." Kubis, 146 N.J. at 185. "[E]nforcement of forum selection clauses in contracts subject to the [NJFPA] would substantially undermine the protections that the Legislature intended to afford to all New Jersey franchisees." Id. at 192-193. As such, forum selection clauses between franchisors and franchisees are presumptively invalid, because they fundamentally conflict with the basic legislative objectives of protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief against franchisors that violate the NFJPA. Id. at 193. As the Court has determined that the Navraj Agreement creates a franchise, the forum selection clause is presumptively invalid and "should not be enforced unless the franchisor can

---

[6] Motion to Dismiss, Exhibit 1, at ¶4(A): "Your right to use the Marks is derived only from this Agreement…"

satisfy the burden of proving that such a clause was not imposed on the franchisee unfairly on the basis of its superior bargaining position." Id. at 195. Defendants have not made a showing that the clause was not imposed because of its superior bargaining position. Therefore the Court declines to enforce the forum selection clause. A plaintiff's choice of forum is a "paramount consideration" and should not be "lightly disturbed." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks omitted). In light of the presumption in *Kubis*, Plaintiffs' connections to New Jersey and their choice of this forum, the Court retains jurisdiction over the claims.

### 2. AMP

The parties do not dispute whether the AMP Agreement created a franchise. Instead, Defendants have invoked an arbitration clause in the AMP Agreement which they say mandates that the AMP claims be adjudicated by an arbitrator. The Federal Arbitration Act (FAA) governs the enforcement of agreements to arbitrate in contracts involving interstate commerce. 9 U.S.C.A. §§ 1 et seq. Section 2 of the FAA makes such agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. §2.

Although the NJFPA establishes a presumption against the validity of forum selection clauses, such a presumption is not applicable to arbitration clauses under the FAA. The federal FAA preempts the state NJFPA in this matter. See Allen v. World Inspection Network International, Inc. 389 N.J. Super. 115 (A.D. 2006) *cert. denied*, 194 N.J. 267. As a result, since the FAA preempts the NJFPA regarding the presumption of invalidity of such arbitration clauses, such clauses between franchisor and franchisee are enforceable. Central Jersey Freightliner, Inc. v. Freightliner Corp., 987 F.Supp. 289 (D.N.J. 1997).

However, Plaintiffs claim that the arbitration clause is not binding because they say the AMP Agreement constitutes a contract of adhesion and must be invalidated upon grounds of procedural unconscionability. To show adhesion, the plaintiffs reproduce an email from the president of Panchero's that states that the contracts are "not negotiable." (*See* Opposition, at 6). Furthermore, in their brief in opposition to the motion to dismiss, Plaintiffs include declarations made by both Rajendra I. Patel and Erik Papadopolo. Plaintiff Patel reiterates the point that "the agreement was not negotiable," while Plaintiff Papadopolo states that it was made "extremely clear [that] the terms of the Franchise Agreement were not negotiable and it was being submitted on a take it or leave it basis." (Opposition, Exhibit B, ¶12, & Exhibit C, ¶11).[7]

It is true that a court may find an arbitration clause to be invalid upon a showing of "fraud, duress, mistake, or some other ground recognized by the law applicable to contracts". Seus v. John Nuveen & Co., Inc., 146 F.3d 175, 183-84 (3d Cir. 1998). It is also true that one such ground upon which courts invalidate contracts is where the contracts are unconscionable. The defense of unconscionability requires more than just an allegation that a contract is one of adhesion. See Delta Funding Corp. v. Harris, 189 N.J. 28, 39-40 (N.J. 2006) (citing Muhammad v. County Bank of Rehoboth Beach, 189 N.J. 1, 15-16, 2006 N.J. LEXIS 1154 (2006)). While "contracts of adhesion necessarily involve indicia of procedural unconscionability", courts look at other factors which "deserv[e] attention when a court is asked to declare a contract of adhesion unenforceable", such as (1) the subject matter of the contract, (2) the parties' relative bargaining

---

[7] These facts are properly before the Court because where the enforceability of an arbitration clause is at issue, a "restricted inquiry into factual issues" is necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 22 (1983). In such circumstances, Fed. R. Civ. P. Rule 56 furnishes the correct standard for ensuring that arbitration is awarded only if there is "an express, unequivocal agreement to that effect." Par-Knit Mills, Inc. v. Stockbridge Fabrics, Ltd, 636 F.2d 51, 54 (3d Cir. 1980); s*ee also* Guidotti v. Legal Helpers Debt Resolution, LLC, --- F.3d ---, 2013 WL 2302324, (3d Cir. 2013).

positions, (3) the degree of economic compulsion motivating the "adhering" party, and (4) the public interests affected by the contract. Delta Funding Corp., 189 N.J. at 39-40.

Here, Plaintiffs have not shown that these elements weigh in favor of not enforcing the arbitration provision. Plaintiffs argue that (1) generally there exists unequal bargaining power in franchisor-franchisee relationships, (2) that this contract was presented on a take it or leave it basis, and (3) that the dispute resolution terms are unreasonably favorable to the drafter, because, Plaintiffs claim, they grant the franchisor a right to either litigate or arbitrate while purporting to require the franchisee to only arbitrate. As an initial matter, in support of the last contention, Plaintiffs cite paragraph XXX(D) which states, "Nothing herein contained shall bar Franchisor's right to obtain injunctive relief against threatened conduct that will cause it loss or damages . . . ." This provision does not alter the arbitration provision in any way, which grants either party the right to demand arbitration. Nor does this provision say that AMP, the franchisee, could not obtain injunctive relief in the same manner the franchisor could. Finally, Plaintiffs neglect to mention that only two pages later in the contract, it states: "Despite Franchisor's and Franchisee's agreement to arbitrate, *Franchisor and Franchisee each have the right* in a proper case to seek temporary restraining orders and temporary or preliminary injunctive relief . . .". Id. ¶XXXI (emphasis added). So Plaintiffs' support for their contention that the contract contained elements of substantive unconscionability is belied by the facts properly before the Court. The Court is also not persuaded by Plaintiffs' other arguments in support of their assertion that the contract is unenforceable. Here, the face of the Navraj agreement itself shows that the contracts were not wholly non-negotiable, as the contract contains handwritten changes inserted by Navraj. In addition, even if the Court accepts the assertion that this was a contract of adhesion – a standard pre-printed form presented on a take-it-or-leave-it basis – Plaintiffs have not shown that

12

they had such unequal bargaining power that the contract must be voided. Plaintiffs could have taken their business elsewhere or sought advice before entering into the contract, and it has not been shown that any time limitation was placed on Plaintiffs' ability to sign the contract. See Stelluti v. Casapenn Enterprises, *LLC*, 203 N.J. 286, 1 A.3d 678 (N.J. 2010). The enforceability of the arbitration clause is further supported by Plaintiffs' concession – implicit in their breach of contract claim [8] – that Panchero's and AMP entered into a valid and binding contract. Accordingly, the Court will enforce the arbitration clause in the AMP Agreement.

**CONCLUSION**

For the reasons stated above, the Court holds that the Navraj Agreement is subject to the NJFPA, and accordingly the Court declines to uphold forum selection clause contained in that agreement. Therefore, to the extent that the instant motion to dismiss seeks dismissal of the Navraj parties' claims in favor of suit in an Illinois court, the motion is denied. The court also holds that the arbitration clause in the AMP Agreement is valid and enforceable, and as such the Court will issue an appropriate order compelling the AMP Parties to comply with the arbitration provision; however, in light of the forum selection questions at issue in the instant motion and the Court's resolution of same, the Court will give the parties fourteen days from the date of this decision within which to decide whether to invoke the arbitration clause with respect to the Navraj Parties' claims, which to this date has not been done. If neither party elects to arbitrate those claims, the Court shall issue an Order compelling the AMP Parties to arbitrate their claims, and the Court shall then proceed to rule on the merits of the instant motion to dismiss with respect to the Navraj Parties' claims. For now, decision on the merits is reserved.

---

[8] To state a claim for breach of contract, a plaintiff must allege a valid contract between the parties. See Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007).

# ORDER

**IT IS**, on this 14th day of August, 2013:

**ORDERED** that the motion to dismiss (ECF No. 21) is denied to the extent it seeks dismissal of the Navraj Parties' claims based on a forum selection clause; and it is further

**ORDERED** that Plaintiffs and Defendants have fourteen (14) days within which to elect to arbitrate the Navraj Parties' claims; and it is further

**ORDERED** that decision on the rest of the issues raised by the motion to dismiss is reserved.


August 14, 2013                                  *s/Peter G. Sheridan*
                                                 PETER G. SHERIDAN, U.S.D.J.